UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEBORAH LAUFER**, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-02206 (TNM) |
| **ALAMAC INC.**, | |
| Defendant. | |

**MEMORANDUM OPINION**

Deborah Laufer sued Alamac Inc., owner of the River Inn in Washington, D.C. She alleges violations of Title III of the Americans with Disabilities Act ("ADA"). Laufer asserts that the River Inn has discriminated against her by breaching a regulation that requires it to ensure third-party online reservation systems are accessible for disabled users. The River Inn did not appear, and the Clerk of the Court entered default. Laufer then filed a motion for a default judgment.

The Court ordered Laufer to show cause why her complaint should not be dismissed for lack of subject-matter jurisdiction. With the benefit of her response, as well as her proposed amended complaint, the Court finds that Laufer lacks standing. Her motion for default judgment will be denied as moot, and the complaint will be dismissed. Because Laufer's proposed amended complaint does not cure the standing deficiencies, her pending motion for leave to amend will be denied as futile.

I.

Laufer resides in Pasco County, Florida. Compl. ¶ 1, ECF No. 1. She states that she "qualifies as an individual with disabilities as defined by the ADA." *Id.* Laufer "is an advocate

of the rights of similarly situated disabled persons and is a 'tester' for the purpose of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA." *Id.* ¶ 2.

Patrons can reserve rooms at the River Inn through various third-party websites, such as priceline.com or expedia.com. *Id.* ¶ 9. Laufer alleges that these websites "did not identify or allow for reservation of accessible guest rooms and did not provide sufficient information regarding accessibility at the hotel." *Id.* ¶ 10. She thus claims that the River Inn did not comply with a regulation which requires places of lodging to, among other things, "ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms" and "[i]dentify and describe accessible features in the hotels and guest rooms." 28 C.F.R. § 36.302(e)(1)(i)–(ii); *see also id.* § 36.302(e)(1) (applying to "reservations made by any means, including . . . through a third party").

Laufer states that she "visited the websites for the purpose of reviewing and assessing the accessible features at the Property and [to] ascertain whether they meet the requirements of 28 C.F.R. Section 36.302(e) and her accessibility needs." Compl. ¶ 10. As a tester, Laufer "maintains a system to ensure that she revisits the online reservations system of every hotel she sues." *Id.* ¶ 11. "In the near future," Laufer "intends to revisit Defendant's online reservations system in order to test it for compliance with" the regulation. *Id.* Her complaint also alleges, though, that she "is continuously aware that the subject websites remain non-compliant and that it would be a futile gesture to revisit the websites as long as those violations exist unless she is willing to suffer additional discrimination." *Id.* ¶ 12.

Laufer contends that she "is suffering irreparable harm." *Id.* ¶ 19. Her complaint explains that she "has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's website"; and that "[b]y continuing to operate the websites with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public." *Id.* ¶ 13.

Laufer seeks declaratory and injunctive relief, as well as attorneys' fees. *See id.* at 9–10.[1] This action is one of "hundreds of identical lawsuits in federal district courts around the country." *Laufer v. Mann Hosp., LLC*, --- F.3d ---, No. 20-50858, 2021 WL 1657460, at *1 (5th Cir. Apr. 28, 2021); *see also Laufer v. Dove Hess Holdings, LLC*, No. 5:20-cv-379-BKS-ML, 2020 WL 7974268, at *18 (N.D.N.Y. Nov. 18, 2020) (acknowledging "the large number of nearly identical lawsuits Plaintiff has filed in numerous jurisdictions"); *Laufer v. Naranda Hotels, LLC*, No. 20-cv-1974-SAG, 2020 WL 7384726, at *8 (D. Md. Dec. 16, 2020) ("In total, Plaintiff has filed at least 557 suits in sixteen different states, plus the District of Columbia.").

When the River Inn failed to appear, the Clerk entered default. Clerk's Entry of Default, ECF No. 11. Laufer then moved for default judgment. Pl.'s Mot. for Default J., ECF No. 12. The Court questioned whether it had jurisdiction over Laufer's motion and ordered Laufer to show cause why the case should not be dismissed for lack of standing. Order to Show Cause (Dec. 8, 2020), ECF No. 13. Laufer responded to the order, *see* Pl.'s Resp. to Order to Show Cause ("Pl.'s Resp."), ECF No. 15, and she later moved for leave to amend her complaint, *see* Mot. for Leave to File Am. Compl., ECF No. 17.[2]

---

[1] All page citations refer to the page numbers that the CM/ECF system generates.

[2] Plaintiff's counsel has repeatedly ignored the Court's orders, the Local Civil Rules, and the Federal Rules of Civil Procedure. *First*, Plaintiff moved for entry of default after filing a

## II.

Federal Rule of Civil Procedure 55 governs default judgment procedures. A plaintiff may "apply to the court for a default judgment" after the opposing party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a)–(b). "[T]he entry of a default judgment is not automatic." *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) (cleaned up). The appropriateness of a default judgment "is committed to the sound discretion of this Court." *Boland v. Yoccabel Constr. Co.*, 293 F.R.D. 13, 17 (D.D.C. 2013).

As relevant here, "the procedural posture of a default does not relieve a federal court of its affirmative obligation to determine whether it has subject matter jurisdiction over the action." *Herbin v. Seau*, 317 F. Supp. 3d 568, 571 (D.D.C. 2018) (cleaned up). "The Court cannot enter a default judgment when it lacks jurisdiction." *Terry v. Dewine*, 75 F. Supp. 3d 512, 530 (D.D.C. 2014). It is the plaintiff's burden to establish jurisdiction. *See Herbin*, 317 F. Supp. 3d at 571.

"Leave to amend a complaint under Rule 15(a) 'shall be freely given when justice so requires.'" *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting Fed. R. Civ. P. 15(a)). But "[c]ourts may deny a motion to amend a complaint as futile if the proposed claim

---

document purporting to be proof of service, which stated "District of Florida" at the top. *See* Min. Order (Sept. 16, 2020). *Second*, Plaintiff failed to follow the Court's order to explain "why the original return of service affidavit named the wrong Court," prompting the Court to issue another order. *See* Min. Order (Sept. 23, 2020). *Third*, Plaintiff filed an amended complaint after the time to amend as of right had passed without an accompanying motion for leave to amend or a redline comparison of the original and amended pleading. *See* Min. Order (Jan. 12, 2021). *Fourth*, Plaintiff failed to meet the deadline by which the Court ordered Plaintiff to serve a copy of the Court's order to show cause on Defendant and file a certificate of service. *See* Min. Order (Jan. 12, 2021). *Fifth*, Plaintiff filed a motion for extension of time to serve the amended complaint even though the Court had not yet ruled on Plaintiff's motion for leave to amend. *See* Min. Order (Mar. 11, 2021). While counsel's conduct has not affected the outcome here, he should more carefully handle his clients' litigation in the future. New violations may prompt sanctions against him and his client.

would not survive a motion to dismiss." *Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir. 2016) (cleaned up). When a plaintiff's proposed complaint "fails to establish subject-matter jurisdiction . . . granting the plaintiff's motion to amend would be futile." *Miller v. United States*, 496 F. Supp. 2d 129, 133 (D.D.C. 2007). "[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone*, 76 F.3d at 1208.

## III.

The Court determines (A) that Laufer has not shown that she has standing, and (B) that her proposed amended complaint would be futile.

## A.

Federal courts are courts of limited jurisdiction. Article III curtails the judicial power to deciding "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). It "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.*

Only plaintiffs who show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief" have standing to sue. *Thole v. U.S. Bank*, 140 S. Ct. 1615, 1618 (2020). The plaintiff "bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

Article III standing is jurisdictional. It "can be raised at any point in a case proceeding and, as a jurisdictional matter, may be raised, *sua sponte*, by the court." *Bauer v. Marmara*, 774 F.3d 1026, 1029 (D.C. Cir. 2014) (quoting *Steffan v. Perry*, 41 F.3d 677, 697 n.20 (D.C. Cir. 1994) (en banc)). "When there is doubt about a party's constitutional standing, the court *must* resolve the doubt, *sua sponte* if need be." *Id.* (cleaned up). "In determining whether there is jurisdiction, the Court may 'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Terry v. First Merit Nat'l Bank*, 75 F. Supp. 3d 499, 506 (D.D.C. 2014) (quoting *Coal. for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C. Cir. 2003)).

**1.**

Laufer's alleged injury is not concrete. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (quoting Black's Law Dictionary 479 (9th ed. 2009)). Laufer alleges dignitary and informational harms arising from the River Inn's regulatory violations. *See, e.g.*, Compl. ¶ 13 ("Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's website."); *id.* (alleging that the River Inn "contributes to Plaintiff's sense of isolation and segregation"); *id.* (alleging that the violations "deprive her of the information required to make meaningful choices for travel").

"There is no doubt that dignitary harm is cognizable" because "stigmatic injury is one of the most serious consequences of discrimination." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833–34 (7th Cir. 2019) (Barrett, J.) (cleaned up). "But not all dignitary harms are sufficiently concrete to serve as injuries in fact." *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 654 (4th Cir. 2019). While "statutes may define what injuries are legally cognizable—

6

including intangible or previously unrecognized harms"—they "cannot dispense with the injury requirement altogether." *Mann Hosp.*, 2021 WL 1657460, at *2.

"As the Supreme Court clarified in *Spokeo* . . . Article III standing requires a concrete injury even in the context of a statutory violation." *Frank v. Autovest, LLC*, 961 F.3d 1185, 1188 (D.C. Cir. 2020) (cleaned up). The Court explained that not all procedural violations "cause harm or present any material risk of harm." *Spokeo*, 136 S. Ct. at 1550; *see also Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019) ("After all, a procedural right *in vacuo* is nothing more than an abstract interest in the proper administration of the law." (cleaned up)). Such violations must "entail a degree of risk sufficient to meet the concreteness requirement" for a plaintiff to have Article III standing. *Spokeo*, 136 S. Ct. at 1550. Thus, "[t]he concreteness component of injury in fact sharply limits when a plaintiff can establish standing based solely on a violation of his statutory rights." *Jeffries*, 928 F.3d at 1063.

The Fifth Circuit recently addressed nearly identical claims brought by Laufer. *See Mann Hosp.*, 2021 WL 1657460, at *1. There—as here—Laufer alleged that she could not tell from a motel's online reservation systems ("ORS") "whether it has rooms that could accommodate her disabilities." *Id.* at *2. The court explained that Laufer lacked standing because, while she "does claim to have visited the ORS, she does not claim she tried to book a room or even intended to do so"; she "attests only to a general intent to visit the area someday." *Id.* More, the court decided that Laufer could not show standing by framing her injury as an "informational" one. *Id.* It reasoned that even if "a failure to advertise accessibility information could support an ADA claim, Laufer still would need to allege at least that the information had some relevance to *her*." *Id.* (cleaned up). The court determined that she had not done so "[w]ithout sufficiently concrete plans to book a stay at the motel." *Id.*

So too here. Laufer's complaint lacks any allegations that she intends to visit the District. Indeed, it states that she perused the websites not to reserve a room, but "for the purpose of reviewing and assessing the accessible features at the Property and [to] ascertain whether they meet the requirements of 28 C.F.R. Section 36.302(e) and her accessibility needs." Compl. ¶ 10. "In other words, she visited the [websites] to see if the [River Inn] complied with the law, and nothing more. Such allegations do not show enough of a concrete interest in [the River Inn's] accommodations to confer standing."[3] *Mann Hosp.*, 2021 WL 1657460, at *2. That makes this case unlike others in which past and plausible future visits to a location sufficed to show standing. *See, e.g.*, *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1337 (11th Cir. 2013) ("[Tester] has been to the store in the past, he wants to return, and his frequent trips directly past the store render it likely that he would do so were it not for the alleged ADA violations in the [store].").

Laufer also claims she was "deprive[d] of . . . information," Compl. ¶ 13, but that injury is not concrete either. The D.C. Circuit has recognized that "[a] plaintiff suffers sufficiently concrete and particularized informational injury where the plaintiff alleges that: (1) [she] has been deprived of information that, on [her] interpretation, a statute requires the government or a third party to disclose to [her], and (2) [she] suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

---

[3] The Court rejects Laufer's assertion that requiring her to show a concrete injury is akin to "improperly impos[ing] the additional requirement of 'intent' into the governing statutory language." Pl.'s Resp. at 12. Rather than appending an element to a statute, it is a baseline requirement for constitutional standing. *See Spokeo*, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation.").

Even assuming Laufer has met the first requirement, which is not clear, she has not shown that she suffered "the type of harm" the ADA regulation seeks to prevent because the denial of access to the accessibility information did not prevent her from reserving a room. *Cf. Frank*, 961 F.3d at 1188 (holding that the plaintiff had not shown informational injury because "she disclaimed detrimental reliance—or any other harm—based on the misrepresentations"). Information about the accessibility of the River Inn is irrelevant to Laufer if she never intends to make a reservation or stay at the hotel. *Cf. Griffin*, 912 F.3d at 654 ("Inability to obtain information is sufficiently concrete to constitute injury in fact only when the information has some relevance to the litigant.").[4]

Laufer's complaint could be dismissed for lack of concreteness alone. But Laufer has also not alleged a particularized injury—a separate and necessary requirement to show an injury in fact. *See Spokeo*, 136 S. Ct. at 1548 ("We have made it clear time and time again that an injury in fact must be both concrete *and* particularized."). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Id.* (cleaned up).

"Concreteness and particularization are distinct components of an injury in fact, but in the case of abstract dignitary harm, they are two sides of the same coin. Indignation at violation of the law is not concrete because it does not impact the plaintiff personally; it is not

---

[4] Laufer's citation to cases finding organizational standing are irrelevant. *See* Pl.'s Resp. at 22–23. But even in those cases, the D.C. Circuit recognized that information had a special relevance to the organization. *See, e.g., PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1095 (D.C. Cir. 2015) ("Because PETA's alleged injuries—denial of access to bird-related AWA information including, in particular, investigatory information, and a means by which to seek redress for bird abuse—are concrete and specific to the work in which they are engaged, we find that PETA has alleged a cognizable injury sufficient to support standing." (cleaned up)); *Action All. of Senior Citizens v. Heckler*, 789 F.2d 931, 937–38 (D.C. Cir. 1986) (explaining that the organizations "alleged inhibition of their daily operations, an injury both concrete and specific to the work in which they are engaged," which was not a "mere 'interest in a problem' or ideological injury" (cleaned up)). Laufer has not shown the same here.

particularized because it does not affect him in an individual way." *Carello*, 930 F.3d at 834 (cleaned up).  That principle applies here.  Laufer alleges no facts showing her intent to book a room and thus does not set herself apart from any other disabled person surfing the internet who stumbles upon the websites at issue.  *Cf. Dove Hess Holdings*, 2020 WL 7974268, at *13 ("[I]f the tester has no actual desire to *use* the ORS for any purpose, and the information required by § 36.302(e)(1) has no actual specific relevance to the tester beyond her generalized desire to find and redress ADA violations, those injuries are no more concrete or particularized than the injuries suffered by *any* disabled individual who happens to stumble across a noncompliant website while surfing the internet from the comfort of their home.").  There is no connection between Laufer and the River Inn "that differentiates the plaintiff so that [her] injury is not common to all members of the public."  *Griffin*, 912 F.3d at 655 (cleaned up).

Contrary to Laufer's suggestion, *see* Pl.'s Resp. at 18, the Court agrees with the Fifth Circuit that "Laufer's assumed status as an 'ADA tester' does not absolve her of the need to show an injury in fact for standing purposes," *Mann Hosp.*, 2021 WL 1657460, at *3.  This case is distinguishable from *Havens Realty v. Coleman*, in which the Supreme Court held that "[a] tester who has been the object of a misrepresentation made unlawful under § 804(d) [of the Fair Housing Act] has suffered injury in precisely the form the statute was intended to guard against." 455 U.S. 363, 373–74 (1982).  The Court characterized this injury as "direct," given "the denial of the tester's own statutory right to truthful housing information caused by misrepresentations to the tester."  *Id.* at 375.

There, unlike here, the injury was concrete—"the information had some relevance to the tester because the statute forbade misrepresenting it to 'any person,' quite apart from whether the tester needed it for some other purpose."  *Mann Hosp.*, 2021 WL 1657460, at *3 (cleaned up).

The ADA has no similar "congressional intention" to confer a right to "truthful information" that distinguished § 804(d) from similar causes of action that do require more to establish standing. *See Havens Realty*, 455 U.S. at 373–74; *see also Hernandez v. Caesars License Co., LLC*, No. 19-cv-06090-RBK-KMW, 2019 WL 4894501, at *4 (D.N.J. Oct. 4, 2019) (explaining that *Havens* "do[es] not stand for the proposition that the plaintiff's motivations when interacting with the defendant are irrelevant to the injury-in-fact inquiry," but instead is an "instance[] in which [a] plaintiff[] identified harm that did not depend on [his] motivations").

## 2.

To obtain injunctive relief, *see* Compl. at 9, Laufer must also show a "real or immediate threat" of future injury, *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). That future injury must be "imminent." *Griffin*, 912 F.3d at 655 (cleaned up). Although imminence "is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Id.* (cleaned up).

Even if Laufer showed a concrete and particularized past injury, she has not shown an immediate threat of future injury. Laufer "has not demonstrated that h[er] intent to return to the [websites] is plausible" and "[i]ndeed, there are reasons to think it is objectively implausible." *Griffin*, 912 F.3d at 656. Her complaint states "that it would be a futile gesture to revisit the websites as long as those violations exist unless she is willing to suffer additional discrimination." Compl. ¶ 12. Assuming that Laufer will return to the websites, she plans to do

so only "to test it for compliance" with the ADA regulation. *Id.* ¶ 11. This would not be a future injury in fact for the same reasons it is not a past one.

\*   \*   \*

The Court is not alone here. Many courts faced with Laufer's similar claims have held that she lacks Article III standing. *See, e.g.*, *Mann Hosp.*, 2021 WL 1657460, at \*3 ("[T]he district court correctly dismissed Laufer's complaint for lack of subject-matter jurisdiction."); *Laufer v. Bre/Esa P Portfolio, LLC*, No. 20-cv-1973-SAG, 2020 WL 6801924, at \*4 (D. Md. Nov. 19, 2020) ("join[ing]" the "many other[]" courts "in concluding that Plaintiff, like similarly situated ADA testers, failed to plead an injury sufficiently concrete and particularized to confer Article III standing"); *Laufer v. Ft. Meade Hosp., LLC*, No. 8:20-cv-1974-PX, 2020 WL 6585955, at \*1 (D. Md. Nov. 10, 2020) ("Because Laufer lacks standing to bring the claim, this Court lacks jurisdiction over the case."); *but see Laufer v. Lily Pond LLC C Series*, No. 20-cv-617-WMC, 2020 WL 7768011, at \*1 (W.D. Wis. Dec. 30, 2020) ("the court is satisfied that plaintiff has standing to proceed").[5] This case is no different. The Court will dismiss Laufer's complaint for lack of standing and deny her motion for default judgment.

## B.

Laufer tries to ameliorate these standing deficiencies by requesting leave to file an amended complaint. Her proposed amended complaint adds the following paragraph:

> Plaintiff has been to such areas as Washington DC multiple times and has driven from Florida to New York multiple times and stays in hotels along the journey. Since 2019, Plaintiff has had, and continues to have, plans to drive from Florida all the way up to Maine, then westward along a northerly route to Colorado and back through such states as Texas to Florida. She and her sister are contemplating the purchase of a bed and breakfast to run in Maine. She will be visiting family in New

---

[5] Laufer cites other district court decisions that have reached a different conclusion when faced with her cases and similar ones. *See* Pl.'s Resp. at 5–10. But these cases are not binding on the Court, and the Court does not find them persuasive for the reasons explained.

> York and Colorado. Plaintiff will be traveling with her daughter and grandchild on an educational excursion, meandering throughout the various states through which she travels, visiting historical sites, museums, points of interest, tourist attractions, etc. She originally planned to make this trip in the Summer of 2020, but is now awaiting the Covid crisis to subside and will commence her travels as soon as the crisis is over. The failure of the Defendant's and other hotels to comply with the Regulation deprive her of the information she needs to make a meaningful choice in selecting the hotels in which she will stay during her trip.

Am. Compl. ¶ 10, ECF No. 17-4. She also added an allegation that, besides visiting the website before filing this lawsuit to test compliance with the ADA regulation, "Plaintiff also visited these websites for the purpose of comparing the accessible features of this hotel with others to determine which hotels she can stay in during her travels." *Id.* ¶ 11.

The Court finds that granting Laufer leave to file her amended complaint would be futile because, as amended, it still does not establish standing. Even if the amended complaint describes a past concrete or particularized injury, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (cleaned up). And Laufer's allegations of future injury in her amended complaint fall short. Although the amended complaint does not explicitly say so, it *suggests* that Laufer plans to book a hotel for her travels here by describing her road trip from Florida to Maine. But any future injury in re-visiting the websites to attempt to reserve a room is not "*certainly* impending." *Clapper*, 568 U.S. at 409.

Laufer does not describe when she will return to the websites to reserve a room. Or when she plans to travel to the District. She contends only that she "is now awaiting the Covid crisis to subside and will commence her travels as soon as the crisis is over." Am. Compl. ¶ 10. But the Supreme Court has held that an expressed "intent to return" somewhere visited before "is simply not enough." *Lujan*, 504 U.S. at 564 (cleaned up). The Court explained that "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when*

13

the some day will be—do not support a finding of the 'actual or imminent' injury that [its] cases require." *Id.* Laufer's vague allegations of future injury, much like those in *Lujan*, do not show standing. *Cf. Naranda Hotels*, 2020 WL 7384726, at *6 ("[T]he sort of all-encompassing standing doctrine Plaintiff seeks to create here—where an undefined future desire to travel somewhere is sufficient to create an actual or imminent ADA injury centered on room reservations—is foreclosed by *Griffin* and the Supreme Court jurisprudence upon which it relies.").

More, some courts have questioned the credibility of Laufer's assertion of future injury. A court in Maryland, faced with similar allegations, explained that

> [i]n total, Plaintiff has filed at least 557 suits in sixteen different states, plus the District of Columbia. When her standing to sue has been challenged, she has used virtually identical language in each case to describe her travel plans, changing only the locations she plans to visit to correspond with the location of the defendant hotel. Inherent in Plaintiff's use of cookie-cutter sworn statements across the country is a core underlying inconsistency: it is impossible for her to actually travel to all of these places 'as soon as' the pandemic ends.

*Id.* at *8 (cleaned up); *see also id.* ("Plaintiff has, under the penalty of perjury, told numerous other district courts across the country the exact same thing she has told this Court: that she plans to travel to *their* respective states 'as soon as' the pandemic ends and to travel 'all throughout' those states, including places as far afield as Colorado, Illinois, Texas, and Wisconsin.").

The court acknowledged that the uncertainty surrounding the COVID-19 pandemic is "a conclusive practical impediment to these allegations." *Id.* at *5. It also found "Plaintiff's claims incredible based on inconsistent attestations she has made in this and other cases throughout the country." *Id.* The court "reache[d] the inescapable conclusion that Plaintiff's purported future plans to visit Maryland cannot be credited."[6] *Id.* at *9. While not dispositive here, these

---

[6] Such conduct could, down the road, lead courts to award attorneys' fees "as a 'punitive' measure for litigants acting 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"

14

findings confirm the conclusion already reached—that Laufer has failed to establish standing, even with the amended complaint's newly added allegations.

## IV.

For all these reasons, Laufer's motion for leave to amend will be denied, and her pending motion for default judgment will be denied as moot. The complaint and this action will be dismissed without prejudice for lack of standing. A separate Order will issue.

Dated: May 17, 2021                                    TREVOR N. McFADDEN, U.S.D.J.

---

*Mann Hosp.*, 2021 WL 1657460, at *3 (quoting *Hall v. Cole*, 412 U.S. 1, 5 (1973)). Federal courts may impose such awards "in the exercise of their equitable powers when the interests of justice so require." *Id.* (cleaned up).